STEVE DIMOPOULOS, ESQ.
Nevada Bar No. 12729
JARED B. KAHN, ESQ.
Nevada Bar No. 12603
SCOTT R. COOK, ESQ.
Nevada Bar No. 5265
DIMOPOULOS LAW FIRM
6671 S. Las Vegas Blvd., Suite 275
Las Vegas, NV 89119
O: (702) 800-6000
F: (702) 224-2114
sc@stevedimopoulos.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EDDIE FRIERSON, an individual; ALBERTO CARDOSO-RAMIREZ, an individual; ANA FIGUEROA-CUEVA, an individual; DEANNA DANIELS, an individual; JANELLE JOHNSON, an individual; JOSEPH JOHNSON, an individual; JAYDEN EGGLESTON, an individual; MELISA GUTIERREZ-TOLOSA, an individual; MICHAEL MARTINEZ, an individual; STACY MARTINEZ, an individual; SADIE JOSEIF, an individual; KEVIN JOSEIF, an individual; TRAVIS SCARBROUGH, an individual; MARIELA ESTRADA, an individual; KWANTIDA PAYAKKA, an individual; JOEL MARTINEZ GUERRA, an individual; ROCIO MEDINA SOLARTE, an individual,TONI O'NEILL, an individual; and ARTURO CASTANARES, and individual, <br><br> Plaintiffs, <br><br> vs. <br><br> FRONTIER AIRLINES, Inc., a Colorado Corporation; Doe Individuals 1-XX, inclusive; and ROE Entities 1-XX, <br><br> Defendants. | CASE NO.:    2:24-CV-02181 <br><br><br><br><br><br><br><br><br><br><br> **ERRATA TO FIRST AMENDED COMPLAINT TO ADD DEMAND FOR JURY TRIAL** <br><br><br><br> ***Jury Trial Demanded*** |

DIMOPOULOS
INJURY LAW

Plaintiffs Eddie Frierson, Alberto Cardoso-Ramirez, Ana Figueroa-Cueva, Deanna Daniels, Janelle Johnson, Joseph Johnson, Jayden Eggleston, Melisa Gutierrez-Tolosa, Michael Martinez, Stacy Martinez, Sadie Joseif, Kevin Joseif, Travis Scarbrough, Mariela Estrada, Kwantida Payakka, Joel Martinez Guerra, Rocio Medina Solarte, Toni O'Neill and Arturo Castanares (collectively "Plaintiffs") by and through their counsel, STEVE DIMOPOLOUS, ESQ., JARED B. KAHN, ESQ., and SCOTT R. COOK of DIMOPOULOS LAW FIRM, and for their Complaint against the Defendant, and each of them alleges as follows:

<u>JURISDICTION</u>

1.    At all times relevant herein, Plaintiff Eddie Frierson is and was a resident of San Diego County, State of California.

2.    At all times relevant herein, Plaintiff Alberto Cardos-Ramirez is and was a resident of Clark County, State of Nevada.

3.    At all times relevant herein, Plaintiff Ana Figueroa-Cueva is and was a resident of Clark County, State of Nevada.

4.    At all times relevant herein, Plaintiff Deanna Daniels is and was a resident of Clark County, State of Nevada.

5.    At all times relevant herein, Plaintiff Janell Johnson is and was a resident of San Diego County, State of California.

6.    At all times relevant herein, Plaintiff Joseph Johnson is and was a resident of San Diego County, State of California.

7.    At all times relevant herein, Plaintiff Jayden Eggleston is and was a resident of Clark County, State of Nevada.

8.    At all times relevant herein, Plaintiff Melisa Gutierrez-Tolosa is and was a resident of Clark County, State of Nevada.

9.    At all times relevant herein, Plaintiff Michael Martinez is and was a resident of Clark County, State of Nevada.

10.    At all times relevant herein, Plaintiff Stacy Martinez is and was a resident of Clark County, State of Nevada.

11.     At all times relevant herein, Plaintiff Sadie Joseif is and was a resident of Riverside County, State of California.

12.     At all times relevant herein, Plaintiff Kevin Joseif is and was a resident of Riverside County, State of California.

13.     At all times relevant herein, Plaintiff Travis Scarbrough is and was a resident of San Diego County, State of California.

14.     At all times relevant herein, Plaintiff Mariela Estrada is and was a resident of Clark County, State of Nevada.

15.     At all times relevant herein, Plaintiff Kwantida Payakka is and was a resident of San Diego County, State of California.

16.     At all times relevant herein, Plaintiff Joel Martinez Guerra is and was a resident of Clark County, State of Nevada.

17.     At all times relevant herein, Plaintiff Rocio Medina Solarte is and was a resident of Sinaloa, Culiacan, Mexico.

18.     At all times relevant herein, Plaintiff Toni O'Neill is and was a resident of Clark County, State of Nevada.

19.     At all times relevant herein, Plaintiff Arturo Castanares is and was a resident of Clark County, State of Nevada.

20.     Upon information and belief, at all times relevant herein Defendant Frontier Airlines, Inc. (DEFENDANT) is and was a Colorado corporation domiciled at 4545 Airport Way, Denver, Colorado 80237 and registered and doing business as a foreign corporation in the State of Nevada.

21.     The true names and capacities of Defendants named herein as DOES I through X X, and ROE BUSINESS ENTITIES I through XX, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff, who, therefore, sues said defendants so designated herein is responsible in some manner for the events and occurrences referred to herein alleged, and Plaintiff will request leave of Court to amend this Complaint to insert the true names and capacities of DOES I through XX, and ROE BUSINESS ENTITIES I through XX, when the same have been ascertained and to join such defendants in this action.

DIMOPOULOS
INJURY LAW

22.    All events complained of herein occurred within Clark County, Nevada at Harry Reid International Airport.

### GENERAL ALLEGATIONS

23.    Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporates the same herein by reference as though fully set forth herein

24.    On or about October 5, 2024, Plaintiffs were paid ticketed commercial passengers on airline Flight 1326, an AIRBUS A321-211, operated by Defendant Frontier Airlines.

25.    The airplane was operated under Title 14 CFR Part 121 as a scheduled domestic passenger flight.

26.    Flight 1326 was flying from San Diego, California to Las Vegas, Nevada.

27.    Upon information and belief, as Flight 1326 was in the process of landing in Las Vegas (Harry Reid International Airport), the cabin crew identified a chemical smell of unidentified origin and detected dense smoke filling the cabin of the aircraft.

28.    Shortly thereafter, the captain and first officer detected an odor in the cockpit which became increasingly pungent and, upon information and belief, smelled like burning rubber and/or petroleum products.

29.    The flight crew donned oxygen masks and the captain initiated a SMOKE/FUMES/AVNCS SMOKE checklist from the Quick Reference Handbook (QRH). The cabin crew noted that, although smoke was not identified in the cabin, the chemical/petroleum odor persisted.

30.    The plane co-pilot declared an emergency on board the aircraft.

31.    As the cabin crew prepared for the reported emergency landing, the aircraft systems began to degrade including the failure of the autopilot and autothrottles.

32.    The cabin crew was unable to determine if the failure of the systems was due to damage to equipment from a fire or the result of systems isolation.  As a result, the captain and first officer proceeded to perform the ELEC EMER CONFIG procedure which deployed the ram air turbine procedure, a function used only in an emergency, to power the flight controls, linked hydraulics and flight critical instrumentation.

DIMOPOULOS
INJURY LAW

33.    Once an emergency was declared, radio calls from the tower went out to the aircraft, but tower officials have indicated no communications were established with the pilot during the emergency crash landing.

34.    The captain's primary flight display failed, providing only limited data and was without speed symbols on the primary flight display.

35.    As a result, the captain relied on a visual approach and audible communications with the first officer to determine airspeeds, altitudes and configuration information.

36.    Upon information and belief, as the dense smoke filled the cabin of Flight 1326, the cabin of the aircraft became extraordinarily hot, and passengers were further traumatized as emergency vehicles were seen assembling on the runway below.

37.    The passengers in the cabin were provided with no information about what was occurring inside or outside the aircraft and received no notification that an onboard emergency had been declared.

38.    The oxygen masks deployed in the cockpit were not activated for the passengers.

39.    Upon touchdown, the captain noted that airplane had no auto brakes, and the anti-skid did not appear to be functioning.

40.    Upon information and belief, the aircraft burst into flames, and fire was observed pouring from the plane as it was landing, and as it proceeded down the runway a large screen of smoke appeared.

41.    Upon information and belief, emergency crews at Harry Reid International Airport were alerted as the dangerously smoke-filled cabin in the plane attempted a landing at the airport as fire poured from the landing gear area of the aircraft.

42.    Upon information and belief, Flight 1326, with an onboard emergency declared, crash landed at Harry Reid International Airport with a hard landing that, in addition to the aforementioned smoke filing the cabin and observable flames pouring from under the plane, resulted in the tires on the aircraft exploding, resulting in a further fire on the aircraft, and collapse of the landing gear which required on board systems and emergency services to extinguish the blaze as the plane dropped onto the runway and the landing gear collapsed.

DIMOPOULOS
INJURY LAW

43.    Passengers on board the aircraft were subjected to the dense smoke, heat, and the sudden drop of the aircraft to the runway and violent impact of the landing as the plane collapsed to the runway.

44.    The passengers were not evacuated once the plane was on the ground but held on a sweltering smoke-filled aircraft for nearly an hour before being evacuated down airstairs and transported by bus to the terminal.

45.    Prior to October 5, 2024, hard landing, Defendant failed to properly repair, inspect, and/or maintain the aircraft in a reasonably safe condition that is the subject of this Complaint, which directly caused the subject incident.

46.    On or about October 5, 2024, and for all times relevant hereto, Defendant failed to operate its aircraft in a reasonably safe manner, which directly caused the subject incident.

47.    Defendant's business is a common carrier under Nevada law, and thus it owed a heightened standard of care that required it to exercise extraordinary, as opposed to ordinary care to its passengers, including Plaintiffs. *See*, *First Transit Inc., v. Chernikoff, 445 P.3d 1253 (Nev. 2019).*

### FIRST CLAIM FOR RELIEF

### (NEGLIGENCE)

48.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 7, as though fully set forth herein.

49.    Defendant, as a common carrier, owed a heightened, extraordinary, duty of care to Plaintiffs; to wit, Defendant had a duty to its passengers to use the highest degree of care consistent with the mode of conveyance used and the practical operation of its business as a common carrier by airlines, and its failure to fulfill this duty is negligence. *See*, *First Transit Inc., v. Chernikoff, 445 P.3d 1253 (Nev. 2019); Sherman v. S. Pac. Co*., 33 Nev. 385, 405 (Nev. 1910); NV J.I. 4NG.42 (2011).

50.    Defendant breached this duty when it operated the aircraft in a negligent, careless, unsafe, and reckless manner in failing to properly inspect, maintain and repair the aircraft in a reasonable manner.

51.    As a direct and proximate result of Defendant's aforesaid actions, Plaintiffs have incurred and continue to incur physical injury, shock and emotional distress, pain and suffering, loss of enjoyment of life, loss of household services, lost wages, lost earning capacity, medical expenses, and future

///

medical expenses, all to Plaintiffs' general and special damages in an amount in excess of fifteen thousand dollars ($15,000.00).

52.    Plaintiffs have been required to retain the services of an attorney and have incurred costs of suit herein.

**SECOND CAUSE OF ACTION**

**DECLARATORY RELIEF UNDER NRS 30, et seq.,**
**SEEKING DECLARATION OF APPLICATION OF**
**THE DOCTRINE OF RES IPSA LOQUITOR**

53.    Plaintiffs incorporates by reference each and every allegation contained in paragraphs 1 through 20 as though more fully set forth herein and further alleges as follows.

54.    This is an action for declaratory relief pursuant to Section 30, et seq., of the Nevada Revised Statutes.

55.    Plaintiffs seek declaratory relief in the form of a declaration that the doctrine of res ipsa loquitor applies to the subject incident.

56.    Defendant had heightened duty to inspect, repair and maintain the aircraft in an airworthy and reasonably safe condition.

57.    The plane and the operation of the same were solely within the Defendant's control, which was a common carrier with the highest duty to its passengers.

58.    The plane crash is of a kind that ordinarily does not occur in the absence of someone's negligence.

59.    The plane crash was caused within the exclusive control of the Defendant.

60.    The plane crash was not due to any voluntary action or contribution on the part of the Plaintiffs.

61.    Defendant has superior knowledge of or are in a better position to explain the accident for res ipsa loquitur to apply.

62.    As a direct and proximate result of Defendant's negligence, Plaintiffs sustained injuries to their bodies, as well as emotional trauma and distress.

63.    A justifiable controversy exists between Plaintiffs and Defendant with respect to the application of the doctrine of res ipsa loquitor to the subject accident.

DIMOPOULOS
INJURY LAW

64.     These justifiable controversies concern Plaintiffs and Defendant's respective rights regarding duty and breach for purposes of applying res ipsa loquitor to the cause of action for negligence and therefore are ripe for judicial determination.

65.     Plaintiffs asks that this Honorable Court to enter declaratory relief in their favor and against Defendants, in accordance with NRS 30 *et seq.,* that the application of res ipsa loquitor applies to the subject incident and to the Defendant's breach of their duty to Plaintiffs.

66.     In accordance with NRS 30.120, and NRS 18 *et seq.*, Plaintiffs are entitled to recover their attorney's fees and costs incurred.

**JURY DEMAND AND PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiff demands a jury trial on all issues so triable and expressly reserves the right to amend this Complaint at the time of trial of the actions herein to include all items of damages not yet ascertained, and demands Judgment against Defendants as follows:

1.     General damages in excess of $15,000.00.

2.     Special damages in excess of $15,000.00.

3.     Lost wages in an amount yet to be determined.

4.     Interest and costs incurred by the Plaintiff in bringing these claims.

5.     Costs of suit incurred including reasonable attorneys' fees.

6.     For such other relief as the Court deems just and proper.

Dated this 22nd day of October 2024.

DIMOPOULOS INJURY LAW

STEVE DIMOPOULOS, ESQ., NV Bar No. 12729
JARED B. KAHN, ESQ., NV Bar No. 12603
SCOTT R. COOK, ESQ., NV Bar No. 5265
DIMOPOULOS LAW FIRM
6671 S. Las Vegas Blvd., Suite 275
Las Vegas, NV 89119
*Attorneys for Plaintiffs*